## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JULIA HEAVERN, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO.: 05-11170- MEL** |
| | ) | |
| MARRIOTT INTERNATIONAL, INC. | ) | |
| and ZURICH NORTH AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

### THE DEFENDANT, ZURICH NORTH AMERICA'S
### MEMORANDUM OF LAW IN SUPPORT OF ITS
### MOTION FOR SUMMARY JUDGMENT

The Defendant, Zurich American Insurance Company incorrectly identified as Zurich

North America ("Zurich"), moves pursuant to Fed. R. Civ. P. 56(c) for summary judgment in its

favor as to Count VI ("Violation of M.G.L. c. 93A and M.G.L. c. 176D, Section 3(9)(f)") of the

Plaintiffs' Complaint, the only Count asserted against Zurich.

Zurich is entitled to summary judgment as a matter of law on Count VI of the Complaint,

and should be dismissed from this case, because:

(1)    the Plaintiffs are barred from asserting claims against Zurich pursuant to

M.G.L. c 93A because the written settlement demands that were sent to Zurich were not proper

demands and failed to satisfy the requirements of M.G.L. c. 93A;

(2)    Zurich did not violate M.G.L. c. 176D by not making a settlement offer to the

Plaintiffs because liability and damages in this case are not reasonably clear; and

(3)    the Plaintiffs suffered no injury or damages as a result of Zurich's failure to

respond to the written demands dated June 21, 2004.

In the alternative, Zurich requests that Count VI of the Complaint asserting claims under Chapter 93A/176D against Zurich be severed and stayed until such time as the Plaintiffs' claims against the Defendant, Capitol Hotel Company f/k/a Marriott International Inc. are resolved. The Plaintiffs cannot maintain their Chapter 93A/176D action against Zurich unless its insured is found liable to the Plaintiffs.

## UNDISPUTED MATERIAL FACTS

### I.    NATURE OF PLAINTIFFS' LAWSUIT.

The Plaintiffs commenced this action against parties allegedly owning, operating or managing the Courtyard Marriott located in Concord, New Hampshire ("Marriott") and Zurich, its insurer,[1] seeking damages for personal injuries allegedly sustained by five minor children on or about March 15, 2003 while they were guests at the Marriott. See copy of Complaint, at ¶¶ 8, 15, attached hereto, as Exhibit A. The Plaintiffs allege that the five minor children sustained various injuries due to exposure to high levels of chlorine or other chemicals in the Marriott's swimming pool. Id., at ¶¶ 8-16. Counts I through V of the Complaint are claims for negligence against the Marriott. Id. at ¶¶ 17-26. Count VI is a claim against Zurich under M.G.L. c. 176D and c. 93A, for Zurich's alleged failure to make a settlement offer and to respond to the Plaintiffs' written demands within thirty (30) days.

### II.    THE ALLEGATIONS AGAINST ZURICH.

Zurich issued Policy No. CPO 2867731-00 to Waterford Hotel Group Inc., which was in effect from December 1, 2002 through December 1, 2003. See copy of Answer, at ¶ 28, attached

---

[1] The Plaintiffs filed this lawsuit with the Plymouth Superior Court on or about March 10, 2005. On or about June 9, 2005, Zurich removed this case to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. §1441 and §1446, as amended and, in accordance with 28 U.S.C. §1332.

hereto, as <u>Exhibit B</u>. As to Count VI, the Plaintiffs allege that Zurich failed to respond to their

written demands within thirty (30) days. <u>Exhibit A</u> at ¶ 30. Further, the Plaintiffs allege that

Zurich's failure to make a fair and equitable offer of settlement was in violation of M.G.L. c.

176D, §3 (9) and constitutes an "unfair and deceptive trade act or practice" within the meaning

of M.G.L. c. 93A, §2. <u>Exhibit A</u> at ¶¶ 28-34. The Plaintiffs seek actual and punitive damages

against Zurich as well as interest, costs and attorneys' fees.

<u>Id.</u> at ¶ 34.

## III. THE JUNE 21, 2004 WRITTEN DEMANDS.

By letter dated June 21, 2004, each of the Plaintiffs[2] sent, through counsel, written

demands to Zurich ("Written Demands"). <u>See</u> copies of Written Demands attached hereto, as

<u>Exhibits C-G</u>. The Written Demands described the injuries sustained by each of the Plaintiffs

and demanded a settlement for a specific dollar amount.[3] <u>Id.</u> at <u>C-G</u>. Each of the Written

Demands concluded as follows:

> **kindly contact me <u>if</u> you wish to discuss settlement** of these matters within
> 30 days of your receipt of this correspondence ... If I do not hear from you
> I will be forced to file suit ... **I look forward to hearing from you and settling
> this matter in an amicable fashion**.

<u>Id.</u> at <u>Exhibits C-G</u>. (Emphasis Added).

The Written Demands do not make reference to Chapter 93A or to the Consumer

Protection Act. <u>Exhibits C-G</u>. In addition, the Written Demands fail to state that there was a

violation of any consumer rights or to identify any consumer rights that Zurich allegedly

---

[2] The five (5) minor Plaintiffs who allegedly sustained injuries were: (1) Julia Heavern; (2) Nicole
Heavern; (3) Kerin Mitchell; (4) Taylor Vieira; and (5) Brian Vieira. <u>Exhibits C-G</u>.

[3] The settlement demand amounts were as follows: (1) Julia Heavern in the amount of $50,000;
(2) Nicole Heavern in the amount of $500,000; (3) Kerin Mitchell in the amount of $50,000; (4) Taylor
Vieira in the amount of $150,000; and (5) Brian Vieira in the amount of $150,000. <u>Exhibits C-G</u>.

violated. Id. Further, the Written Demands fail to allege that Zurich acted in an unfair and deceptive manner, or that the Plaintiffs would seek multiple damages and legal expenses should relief be denied. Id. To the contrary, Plaintiffs' counsel requested that Zurich's representative contact him within thirty (30) days "**if** [he] wish[ed] to discuss settlement... ." Id. at Exhibits C-G. (Emphasis Added).

## ARGUMENT

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if, based on the record evidence, a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). "'Material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995) (citations omitted).

Summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 50 (1st Cir. 2000); Celotex Corp. v. Catrett, 477 U.S. 317, 3222, 106 S.Ct. 2548 (1986). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e).

4

There are no genuine issues of material fact in dispute as to Count VI and Zurich is entitled to Summary Judgment as a matter of law.

## I.    ZURICH DID NOT VIOLATE M.G.L. C. 176D, C. 93A OR ANY OTHER MASSACHUSETTS LAW BY FAILING TO MAKE A SETTLEMENT OFFER OR BY NOT RESPONDING TO PLAINTIFFS' WRITTEN DEMANDS.

The Plaintiffs allege that Zurich is liable under M.G.L. c. 176D and c. 93A, because Zurich "failed to effectuate a prompt, fair and equitable settlement of [the] claim in which liability has become reasonably clear." See Complaint at ¶¶ 31-33, attached hereto, as Exhibit A. Further, the Plaintiffs allege that Zurich is liable M.G.L. c. 176D and c. 93A because Zurich "failed to respond to [the Plaintiffs'] demand letter[s] within 30 days." Id. at ¶ 30. As to Count VI, there are no genuine issues of material fact to be tried and Zurich is entitled to summary judgment as a matter of law.

### A.    ZURICH DID NOT VIOLATE M.G.L. C. 176D BY FAILING TO MAKE A SETTLEMENT OFFER TO THE PLAINTIFFS, BECAUSE LIABILITY AND DAMAGES IN THIS CASE ARE NOT REASONABLY CLEAR.

Zurich has an obligation to investigate promptly the Plaintiff's claim and to make a reasonable offer of settlement *when liability is reasonably clear*. In this case, liability and damages are not reasonably clear. See Hopkins v. Liberty Mutual Insurance Company, 434 Mass. 556, 566 (2001) (Chapters 93A and 176D together require an insurer "to put a fair and reasonable offer on the table when liability *and* damages become clear."); Parker v. D'Avolio, 40 Mass. App. Ct. 394, 395 (1996) (proof of causation *and* damages are necessary before liability becomes clear).

5

Zurich undertook an investigation and learned the following facts that indicate no culpable conduct on the part of its insured:

- The Marriott received no other complaints from guests who had used the pool throughout that day and at the same time as the minor Plaintiffs;

- the pool chlorine levels were tested the day of and the day following the alleged incident, and the chlorine levels were within normal limits;

- the cause of the minor Plaintiffs' injuries is not clear. It appears that all or some of the Plaintiffs were playing in the snow on March 15, 2003 and may have been exposed to salt which might have caused a reaction with the chlorine in the pool. It appears that all or some of the children may have used make-up remover before swimming in the pool which may have made their skin more sensitive to the chlorine in the pool. Also, there were complaints from the Marriott's housekeeping staff that some or all of the minor Plaintiffs were rummaging through and touching cleaning products on the housekeeping cart.

Because liability and damages are not reasonably clear in this case, Zurich was not obligated to make an offer of settlement, and Zurich did not violate M.G.L. c. 176D or any other Massachusetts statute or law by failing to make an offer of settlement to the Plaintiffs.

**B.    THE PLAINTIFFS ARE BARRED FROM ASSERTING CLAIMS PURSUANT TO M.G.L. C. 93A BECAUSE THE WRITTEN DEMANDS FOR SETTLEMENT WERE NOT PROPER DEMANDS AND FAILED TO SATISFY THE REQUIREMENTS OF M.G.L. C. 93A, SECTION 9.**

The Plaintiffs are barred from asserting claims pursuant to M.G.L. c. 93A because the alleged written demands for relief fail to satisfy the requirements of M.G.L. c. 93A, Section 9.

6

Under Massachusetts law, a demand under Chapter 93A must satisfy certain criteria. A demand letter listing the specific deceptive practices claimed is a prerequisite to suit and as a special element must be alleged and proved. Entrialgo v. Twin City Dodge Inc., 368 Mass. 812, 813 (1975). The purpose of the Chapter 93A demand letter is to facilitate the settlement and damages assessment aspects of Chapter 93A, and as such "the letter and notice therein is a procedural requirement, the absence of which is a bar to suit." Id. at 813.

The Chapter 93A demand letter must specifically inform the prospective defendant that relief will be sought pursuant to Chapter 93A. See Cassano v. Gogos, 20 Mass. App. Ct. 348 (1985). This can be accomplished one of the following ways: (1) an express reference to c. 93A; (2) an express reference to the Consumer Protection Act; (3) an assertion that the rights of the claimant as a consumer have been violated; (4) an assertion that the prospective defendant has acted in an unfair or deceptive manner; (5) a reference that the claimant anticipates a settlement offer within 30 days; or (6) an assertion that the claimant will pursue multiple damages and legal expenses, if relief is denied by the prospective defendant. The demand letter must reference one of these six factors (or contain some other signal which will alert a reasonably perceptive recipient), otherwise, "the potential defendant does not have warning that the claimant intends to invoke the remedies Chapter 93A, i.e., multiple damages and the imposition of counsel fees." Cassano v. Gogos, 20 Mass. App. Ct. 348, 350 (1985).

As noted by the Massachusetts Appeals Court:

> It is neither constructive nor fair to allow proceedings to be launched by a demand which hides its identity ... If consumers assert insufficiently express demands, they will lose an opportunity to stimulate productive settlements. **Missives intended to be c. 93A demands but not fairly identifiable as such are likely to lead to miscalculation**. Miscalculation will lead to litigation.

Cassano at 351 (citations omitted). (Emphasis Added).

In this case, Plaintiffs claim that the Written Demands were Chapter 93A demand letters. However, the Written Demands fail to incorporate any of the six criteria set forth above, as required under Massachusetts law. The Written Demands do not refer to Chapter 93A or to the Consumer Protection Act. Exhibits C-G. In addition, the Written Demands fail to allege that there was a violation of consumer rights or that Zurich violated any consumer rights. Id. Further, the Written Demands fail to state that Zurich acted in an unfair and deceptive manner, or that the Plaintiffs would seek multiple damages and legal expenses should relief be denied. Id. To the contrary, Plaintiffs' counsel requested that Zurich contact him within thirty (30) days "**if** [he] wish[ed] to discuss settlement." Id.

Based on the foregoing, summary judgment should enter in favor of Zurich because the Written Demands are not proper demands and fail to meet the statutory requirements of Chapter 93A.

## C.    COUNT VI OF THE PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS SUFFERED NO INJURY OR DAMAGES AS A RESULT OF ZURICH'S FAILURE TO RESPOND TO THE WRITTEN DEMANDS.

In Aspinall v. Philip Morris Co., Inc., 442 Mass. 381, 401-402 (2004), the Massachusetts Supreme Judicial Court reaffirmed the long-standing rule that in order to recover for a Chapter 93A violation under Massachusetts law, a plaintiff must establish both: (1) that an unfair or deceptive act or practice was committed; *and* (2) that the commission of that act or practice caused injury. Id. at 401-402. The Massachusetts Supreme Judicial Court noted that "causation is a required element of a successful G.L. c. 93A claim." Id. at 401 citing Massachusetts Farm Bur. Fed'n Inc. v. Blue Cross of Mass., Inc., 403 Mass. 722, 730 (1989) ("In the absence of a causal relationship between the alleged unfair acts and the claimed loss, there can be no recovery"); See also International Fid. Ins. Co. v. Wilson, 387 Mass. 841, 850 (1983) ("plaintiff

8

must show … a causal connection between the deception and the loss"). Consequently, the failure to respond to a demand letter is only actionable if that conduct specifically resulted in damage to the Plaintiff.

Recently, the Massachusetts Appeals Court considered whether an insurer committed an unfair and deceptive business act or practice by failing to send his insured notice that his insurance coverage had been suspended. See Lord v. Commercial Union Ins. Co., 60 Mass. App. Ct. 309, 318 (2004). The Appeals Court in Lord held that the insurer's failure to send notice to the insured did not constitute an unfair and deceptive business practice under Chapter 93A because the insured's loss did not result from the insurer's action. Id. at 401. The insured's alleged injuries were caused by the automobile accident and not from the insurer's failure to provide notice. Id. at 401. Because the insured's loss or injury did not result from the insurer's action, the insured could not recover even nominal damages and attorneys fees or costs under Chapter 93A.

Similarly, the Plaintiffs in this case suffered no injury or damages as a result of Zurich's failure to respond to the Written Demands, therefore Zurich is entitled to summary judgment as to Count VI as a matter of law.

## II.  IN THE ALTERNATIVE, ZURICH REQUESTS THAT COUNT VI OF THE COMPLAINT BE SEVERED AND STAYED.

In the alternative, Zurich requests that this Court sever and stay Count VI, the Chapter 93A/176D claim, against Zurich so as to avoid undue prejudice to the defense of the Marriott, Zurich's insured during the discovery process and at trial. Claims against an insurer based upon violations of Chapters 93A and 176D are premature until the insured has been found liable. See Belcher v. Pawtucket Mut. Ins. Co., Appeals Court No. 89-J-672 (September 27, 1989)

(Kass, J.) [4]; Gross v. Liberty Mutual Ins. Co., Appeals Court No. 84-0138 (April 24, 1984) (Kass, J.) [5]. That is because the issue of reasonable settlement practices is most effectively, and efficiently, gauged by the resolution of the underlying tort action. See Bixby v. Allstate Ins. Co., 1986 Mass. App. Div. 118, 119, citing Royal Globe Ins. Co. v. Superior Court of Butt County, 23 Cal.3d 880, 502 P.2d 329 (1979) [6].

Until the liability of Zurich's insureds is determined, Zurich's defense of its insured will be hampered seriously by discovery initiated by the Plaintiffs against Zurich. Id. As the Appeals Court stated in Belcher, "to authorize discovery in an unfair settlement claim before the underlying claim has been established is to get the cases in the wrong order." Id. at 1. For example, it would be inappropriate to compel Zurich to disclose materials in its claim file that it gathered or prepared in anticipation of litigation and as to which there is a basis for the assertion of a work-product privilege, among others. Also, Zurich would be placed in the position of having to reveal evidence which is relevant to defending itself in the bad-faith claim but which is non-discoverable in the claim against its insured.

As another example, in the normal course of events a claim file contains the adjuster's evaluation of the strengths and weaknesses of a case. Revealing the contents of the claim file and taking the deposition of the adjuster in the Chapter 93A action would reveal those documented strengths and weaknesses. In fact, the entire thrust of the Chapter 93A action is focused on what the adjuster knew or did not know, what the adjuster's perceptions were regarding the strengths and weaknesses of the case, and whether these positions were reasonably

---

[4] A true and accurate copy of the Belcher decision is attached hereto as Exhibit H.

[5] A true and accurate copy of the Gross decision is attached hereto as Exhibit I.

[6] A true and accurate copy of the Bixby decision is attached hereto as Exhibit J.

held in good faith. Allowing the Plaintiffs to acquire the insurer's tort defense strategies will jeopardize the insurer's ongoing legal defense of its insured. Zurich owes an obligation to its insured to vigorously defend it, and that obligation can be fulfilled only if the claim against Zurich is severed and stayed.

Zurich's defense of its insured likewise will be hampered at the time of trial if the claim against Zurich is not severed. The Plaintiffs' purported action against Zurich is based solely on its status as insurer of the Marriott and not as an independent tortfeasor. If insurance issues relating to Zurich and the claims against its insureds are tried simultaneously, the Plaintiffs will necessarily interject evidence of the Marriott's insurance into the trial. As a matter of law, introduction of issues relating to insurance are irrelevant and inherently prejudicial to the trial of the claims against its insured. See Goldstein v. Gontarz 364 Mass. 800, 807-814 (1974). For each of the foregoing reasons, the interests of judicial economy and fairness to the various litigants will be served by severing and staying the Plaintiffs' claim for violation of Chapter 93A/176D against Zurich.

11

**WHEREFORE**, Zurich requests that this Court:

(1) enter summary judgment against the Plaintiffs and in favor of Zurich as to Count VI of the Plaintiffs' Complaint;

(2) dismiss Zurich from this case;

(3) in the alternative, sever and stay Count VI for violation of Chapter 93A/176D against Zurich; and

(4) grant such other and further relief as this Court deems appropriate.

## RULE 7.1(2) CERTIFICATION OF COUNSEL

Pursuant to Local Rule 7.1(2), counsel certifies that he has attempted in good faith to resolve or narrow the issue presented by this motion and has not obtained assent from all the parties to the motion.

## ZURICH REQUESTS ORAL ARGUMENT

**ZURICH AMERICAN INSURANCE COMPANY,**
By its Attorneys,

Peter G. Hermes, BBO. No. 231840
Gina A. Fonte, BBO No. 642367
HERMES, NETBURN, O'CONNOR &
SPEARING, P.C.
111 Devonshire Street, 8th Floor
Boston, MA 02109
(617) 728-0050
(617) 728-0052 (Fax)

12

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of August, 2005, I served the above notice on the Plaintiffs in the above-entitled action by mailing a copy thereof, postage prepaid, to counsel of record:

Garrett Bradley, Esquire
Thornton & Naumes, LLP
100 Summer Street, 30th Floor
Boston, MA 02110

Anthony Campo, Esq.
Keith L. Sachs, Esq.
Boyle, Morrissey & Campo
695 Atlantic Avenue
Boston, MA 02111

Gina A. Fonte

G:\DOCS\PGH\clients\zurich\Heavern\Pleadings\Memorandum of Law For SJ Chapter 93A.doc

13

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.

SUPERIOR COURT
C.A. NO.:
PLCV2005- 00287 -B

)
Julia Heavern, by her parents )
and next friends, Denise and Paul )
Heavern, Nicole Heavern, by her )
parents and next friends, Denise )
and Paul Heavern, Kerin Mitchell, )
by her parents and )
next friends, Ellen and Jim Mitchell, )
Taylor Vieira, by her parents and )
next friend, Kathy and Steve Vieira, )
and Brian Vieira, by his parents )
and next friends, Kathy and )
Steve Vieira, )
)
     Plaintiffs, )
)
                               **COMPLAINT AND JURY CLAIM** )
)
v. )
)
)
Marriott International, Inc., )
And Zurich North America )
Defendants. )
)

## PARTIES

1.    Plaintiff, Julia Heavern, is a minor represented by her parents and next friends, Denise and Paul Heavern who resides at 7 Glover Avenue, Hull, Massachusetts.

2.    Plaintiff, Nicole Heavern, is a minor represented by her parents and next friends, Denise and Paul Heavern who resides at 7 Glover Avenue, Hull, Massachusetts.

3.    Plaintiff, Kerin Mitchell, is a minor represented by her parents and next friends, Ellen and Jim Mitchell, who resides at 34 Nantasket Avenue, Hull, Massachusetts.

4.    Plaintiff, Taylor Vieira, is a minor represented by his parents and next friends, Kathy and Steve Vieira, who resides at 51 Warfield Avenue, Hull, Massachusetts.

5.    Plaintiff, Bryan Vieira, is a minor represented by his parents and next friends, Kathy and Steve Vieira, who resides at 51 Warfield Avenue, Hull, Massachusetts.

6.   Defendant, Marriott International, Inc. (hereinafter "Marriott" or "Courtyard Marriott", is a corporation with a principle place of business at 10400 Fernwood Road, Department 862, Bethesda, Maryland.

7.   Defendant, Zurich North America (hereinafter "Zurich") is a corporation with a principle place of business at 1400 American Lane, Schaumburg, Illinois.

## JURISDICTION

7.   The plaintiffs' cause of action arises from the defendant's (1) transacting business in Massachusetts; (2) contracting to supply and/or sell goods in Massachusetts; (3) doing or causing a tortuous act to be done in Massachusetts; and/or (4) causing the consequence of a tortuous act to occur within Massachusetts, and the defendants do, or solicit business, or engage in a persistent course of conduct or derive substantial revenue from the sale of goods in Massachusetts.

## FACTS

8.   On or about March 15, 2003, the plaintiffs were guests at the Courtyard, Marriott in Concord, New Hampshire.

9.   On or about March 15, 2003, the plaintiffs spent approximately six hours swimming in the Courtyard Marriott's indoor swimming pool.

10.   On information and belief, on the morning of said date, the defendant had "shocked" the swimming pool with excessive amounts of chlorine or other chemicals.

11.   On information and belief, on this date, defendants posted no warnings that the pool had excessive or hazardous amounts of chlorine or other chemicals, nor did the defendants prevent guests from using the swimming pool.

12.   On information and belief, the defendants did not use ordinary care, which included their regular practice of closing the pool after "shock" treatments and waiting until the chemical levels were safe before allowing patrons to use the pool.

13.   On information and belief, the defendants did not warn of the non-obvious danger, known to the defendants, that the swimming pool contained unsafe and hazardous levels of chlorine and other chemicals.

14.   On information and belief, the defendants did not make reasonable inspections in order to discover whether their guests were using the swimming pool during times when the levels of chlorine or other chemicals were at unsafe or dangerous levels.

15.   Due to the exposure of high levels of chemicals in the defendant's swimming pool, all five plaintiffs sustained various injuries of varying degrees. These injuries include, but

are not limited to, chemical skin burns, chest discomfort, breathing difficulty, red and sore eyes and asthma.

16.    As a direct and proximate cause of this incident, plaintiffs have accrued significant medical expenses, and certain plaintiffs will continue to accrue medical expenses. Furthermore, plaintiffs were temporarily incapacitated and prevented from participating in their usual activities for a substantial period of time, and have suffered varying degrees of emotional injuries.

## COUNT I
## JULIA HEAVERN, PPA DENISE AND PAUL HEAVERN V. COURTYARD MARRIOTT NEGLIGENCE

17.    Plaintiff, Julia Heavern, PPA Denise Heavern adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

18.    As a direct and proximate result of the negligence of the defendant, the plaintiff Julia Heavern suffered personal injuries, including, but not limited to, 1st degree burns, acute breathing difficulty, and transient skin reaction.

WHEREFORE, plaintiff, Julia Heavern, PPA Denise Heavern, demands judgment against the defendant, Courtyard Marriott, in an amount to be determined at trial, together with interest and costs and such other relief as this Honorable Court may deem necessary.

## COUNT II
## NICOLE HEAVERN, PPA DENISE AND PAUL HEAVERN V. COURTYARD MARRIOTT NEGLIGENCE

19.    Plaintiff, Nicole Heavern, PPA Denise Heavern adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

20.    As a direct and proximate result of the negligence of the defendant, the plaintiff Nicole Heavern suffered personal injuries, including, but not limited to acute difficulty breathing and nausea, burning skin, peeling skin, continuing chapped skin above her upper lip, enduring difficulty breathing, mild rash, transient skin reaction, and mild Reactive Airways Disease (asthma).

WHEREFORE, plaintiff, Nicole Heavern, PPA Denise Heavern, demands judgment against the defendant, Courtyard Marriott, in an amount to be determined at trial, together with interest and costs and such other relief as this Honorable Court may deem necessary.

## COUNT III
## KERIN MITCHELL, PPA ELLEN AND JIM MITCHELL, V. COURTYARD MARRIOTT
## NEGLIGENCE

21.    Plaintiff, Kerin Mitchell, PPA Kathy Vieira, adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

22.    As a direct and proximate result of the negligence of the defendant, the plaintiff Kerin Mitchell suffered personal injuries, including, but not limited to facial burns, breathing difficulty, sore throat, significant skin reaction for several weeks, and emotional trauma.

WHEREFORE, plaintiff, Kerin Mitchell, PPA Ellen Mitchell, demands judgment against the defendant, Courtyard Marriott, in an amount to be determined at trial, together with interest and costs and such other relief as this Honorable Court may deem necessary.

## COUNT IV
## TAYLOR VIEIRA, PPA KATHY STEVE VIERA V. COURTYARD MARRIOTT
## NEGLIGENCE

23.    Plaintiff, Taylor Vieira, PPA Kathy Vieira, adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

24.    As a direct and proximate result of the negligence of the defendant, the plaintiff Taylor Vieira suffered personal injuries, including, but not limited to facial burns, breathing difficulty, sore throat, significant skin reaction for several weeks, and emotional trauma.

WHEREFORE, plaintiff, Taylor Vieira, PPA Kathy Vieira, demands judgment against the defendant, Courtyard Marriott, in an amount to be determined at trial, together with interest and costs and such other relief as this Honorable Court may deem necessary.

## COUNT V
## BRYAN VIEIRA, PPA KATHY AND STEVE VIERA V. COURTYARD MARRIOTT
## NEGLIGENCE

25.    Plaintiff, Bryan Vieira, PPA Kathy Vieira, adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

26.    As a direct and proximate result of the negligence of the defendant, the plaintiff Bryan Vieira suffered personal injuries, including, but not limited to facial burns, breathing difficulty, sore throat, enduring red and irritated eyes, skin burns, skin irritation for weeks following the incident and exacerbation of pre-existing asthma as well as emotional injuries.

WHEREFORE, plaintiff, Bryan Vieira, PPA Kathy Vieira, demands judgment against the defendant, Courtyard Marriott, in an amount to be determined at trial, together with interest and costs and such other relief as this Honorable Court may deem necessary.

## COUNT VI
### JULIA HEAVERN, ET AL., V ZURICH NORTH AMERICA
### VIOLATION OF M.G.L. c. 93A and
### M.G.L. CHAPTER 176D, SECTION 3(9)(f)

27.    Plaintiffs adopt by reference all of the allegations above, each inclusive, as though fully set forth within.

28.    At all times references herein, defendants and insurance coverage through Zurich North America ("Zurich").

29.    After unsuccessful attempts to resolve the matter over the phone, on June 21, 2004, each plaintiff sent Zurich a demand for settlement.

30.    The defendants failed to respond to this demand letter within 30 days.

31.    The defendant has failed to make a fair and equitable offer of settlement in response to said demands for relief.

32.    The defendant's failure to make such an offer is a violation of G.L. c. 176D, §3(9)(f) in that said defendant failed to effectuate a prompt, fair and equitable settlement of a claim in which liability has become reasonably clear.

33.    The defendant's failure to effectuate such a settlement is an unfair and deceptive trade act or practice within the meaning of G.L. c. 93A § 2.

34.    The defendant is liable to the plaintiff for the plaintiff's actual damages and for punitive damages up to three times the actual damages, plus interest, costs and attorney's fees.

**Wherefore,** the plaintiffs demand judgment against the defendant in an amount to be determined at trial, including treble damages, together with interest, costs and such other relief as this Honorable Court deems necessary and proper.


### PLAINTIFFS RESERVE THE RIGHT TO A JURY TRIAL ALL COUNTS
### CONTAINED WITHIN THIS COMPLAINT

Respectfully submitted by the Plaintiffs,
By their Attorney,

Garrett Bradley, Esquire BBO # 629240
THORNTON & NAUMES, LLP
100 Summer Street, 30th Floor
Boston, MA 02110
(617) 730-1333

Dated: March *18* 2005

## COMMONWEALTH OF MASSACHUSETTS

**PLYMOUTH, ss.**
                      **SUPERIOR COURT**
                      **CIVIL ACTION NO. PLCV 2005-00287-B**

|  |  |
|---|---|
| JULIA HEAVERN, et al. | ) |
|      Plaintiffs, | ) |
| v. | )      **ANSWER** |
| MARRIOTT INTERNATIONAL, INC.<br>and ZURICH NORTH AMERICA, | ) |
|      Defendants. | ) |

The Defendant, Zurich American Insurance Company incorrectly identified as Zurich North American ("Zurich") answers the Plaintiffs' Complaint ("Complaint"), as follows:

### PARTIES

1.    Zurich is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the Complaint.

2.    Zurich is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2 of the Complaint.

3.    Zurich is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 of the Complaint.

4.    Zurich is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 of the Complaint.

5.    Zurich is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5 of the Complaint.

6.     Zurich is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6 of the Complaint.

7.     The Defendant, "Zurich American Insurance Company," incorrectly identified as "Zurich North America," admits that it is a corporation with a principal place of business at 1400 American Lane, Schaumburg, Illinois.

## JURISDICTION

7. [sic] Zurich admits that this court has personal jurisdiction over Zurich. Zurich denies the remaining allegations, characterizations and conclusions stated in Paragraph 7 [sic] of the Complaint.

## FACTS

8.     Zurich is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the Complaint.

9.     Zurich is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 of the Complaint.

10.    Zurich is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 of the Complaint.

11.    Zurich is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 of the Complaint.

12.    Zurich denies the allegations contained in Paragraph 12 of the Complaint.

13.    Zurich denies the allegations contained in Paragraph 13 of the Complaint.

14.    Zurich denies the allegations contained in Paragraph 14 of the Complaint.

15.    Zurich denies the allegations contained in Paragraph 15 of the Complaint.

16.    Zurich denies the allegations contained in Paragraph 16 of the Complaint.

2

**COUNT I**
**JULIA HEAVERN, PPA DENISE AND PAUL HEAVERN V. COURTYARD MARRIOTT**
**NEGLIGENCE**

17.    Zurich incorporates herein by reference its Answers to Paragraphs 1 through 16 as if fully set forth herein.

18.    Zurich states that the allegations of Paragraph 18 are directed to another party and Zurich is not required to file a responsive Answer. To the extent an Answer is required, Zurich denies the allegations contained in Paragraph 18 of the Complaint.

**COUNT II**
**NICOLE HEAVERN, PPA, DENISE AND PAUL HEAVERN V. COURTYARD MARRIOTT**
**NEGLIGENCE**

19.    Zurich incorporates herein by reference its Answers to Paragraphs 1 through 18 as if fully set forth herein.

20.    Zurich states that the allegations of Paragraph 20 are directed to another party and Zurich is not required to file a responsive Answer. To the extent an Answer is required, Zurich denies the allegations contained in Paragraph 20 of the Complaint.

**COUNT III**
**KERIN MITCHELL, PPA ELLEN AND JIM MITCHELL V. COURTYARD MARRIOTT**
**NEGLIGENCE**

21.    Zurich incorporates herein by reference its Answers to Paragraphs 1 through 20, as if fully set forth herein.

22.    Zurich states that the allegations of Paragraph 22 are directed to another party and Zurich is not required to file a responsive Answer. To the extent an Answer is required, Zurich denies the allegations contained in Paragraph 22 of the Complaint.

3

## COUNT IV
## TAYLOR VIEIRA, PPA KATHY STEVEN VIERA V. COURTYARD MARRIOTT
### NEGLIGENCE

23.    Zurich incorporates herein by reference its Answers to Paragraphs 1 through 22 as

if fully set forth herein.

24.    Zurich states that the allegations of Paragraph 24 are directed to another party and

Zurich is not required to file a responsive Answer.  To the extent an Answer is required, Zurich

denies the allegations contained in Paragraph 24 of the Complaint.

## COUNT V
## BRYAN VIEIRA, PPA KATHY AND STEVE VIERA V. COURTYARD MARRIOTT
### NEGLIGENCE

25.    Zurich incorporates herein by reference its Answers to Paragraphs 1 through 24, as

if fully set forth herein.

26.    Zurich states that the allegations of Paragraph 26 are directed to another party and

Zurich is not required to file a responsive Answer.  To the extent an Answer is required, Zurich

denies the allegations contained in Paragraph 26 of the Complaint.

## COUNT VI
## JULIA HEAVERN, ET AL. V. ZURICH NORTH AMERICA
### VIOLATION OF M.G.L.c. 93A AND
### M.G.L. CHAPTER 176D, SECTION 3(9)(f)

27.    Zurich incorporates herein by reference its Answers to Paragraphs 1 through 26 as

if fully set forth herein.

28.    Zurich admits Defendant, Marriott International, Inc. had insurance coverage with

Zurich American Insurance Company under the Policy No. CPO 2867731-00 which was in effect

from December 1, 2002 through December 1, 2003

4

29.     Zurich admits that it received a letter dated June 21, 2004 from each of the

Plaintiffs.  Zurich denies the remaining allegations, characterizations and conclusions contained

in Paragraph 29.

30.     Zurich denies the allegations contained in Paragraph 30 of the Complaint.

31.     Zurich denies the allegations contained in Paragraph 31 of the Complaint.

32.     Zurich denies the allegations contained in Paragraph 32 of the Complaint.

33.     Zurich denies the allegations contained in Paragraph 33 of the Complaint.

34.     Zurich denies the allegations contained in Paragraph 34 of the Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Plaintiff has misnamed Zurich in this Complaint.  The Defendant's proper name is

"Zurich American Insurance Company."

### SECOND AFFIRMATIVE DEFENSE

Count VI of the Plaintiffs' Complaint should be dismissed under Rule 12(b)(6) because it

fails to state a claim against Zurich upon which relief can be granted.

### THIRD AFFIRMATIVE DEFENSE

The Plaintiffs are barred from asserting claims pursuant to M.G.L. Chapter 93A because

the alleged written demand for relief fails to satisfy the requirements of M.G.L. Chapter 93A,

Section 9.

### FOURTH AFFIRMATIVE DEFENSE

The Plaintiffs are barred from asserting claims pursuant to M.G.L. Chapter 93A because

the alleged written demand fails to make reference to Chapter 93A, as required by Section 9 of

M.G.L. Chapter 93A.

5

## FIFTH AFFIRMATIVE DEFENSE

The Plaintiffs are barred from asserting claims pursuant to M.G.L. Chapter 93A because the alleged written demand fails to make reference to the Consumer Protection Act, as required by Section 9 of M.G.L. Chapter 93A.

## SIXTH AFFIRMATIVE DEFENSE

The Plaintiffs are barred from asserting claims pursuant to M.G.L. Chapter 93A because the alleged written demand failed to identify *what consumer rights* Zurich violated, as required by Section 9 of M.G.L. Chapter 93A.

## SEVENTH AFFIRMATIVE DEFENSE

The Plaintiffs are barred from asserting claims pursuant to M.G.L. Chapter 93A because the alleged written demand failed to assert that Zurich acted in an unfair and deceptive manner, as required by Section 9 of M.G.L. Chapter 93A.

## EIGHTH AFFIRMATIVE DEFENSE

The Plaintiffs are barred from asserting claims pursuant to M.G.L. Chapter 93A because the alleged written demand failed to assert that the Plaintiffs expect/demand a settlement offer within thirty (30), as required by Section 9 of M.G.L. Chapter 93A.

## NINTH AFFIRMATIVE DEFENSE

The Plaintiffs are barred from asserting claims pursuant to M.G.L. Chapter 93A because the alleged written demand failed to assert that the Plaintiffs would seek multiple damages and legal expenses should relief be denied, as required under Section 9 of M.G.L. Chapter 93A.

6

### TENTH AFFIRMATIVE DEFENSE

Count VI of the Plaintiffs' Complaint should be dismissed because, even if Zurich did not respond to the Plaintiffs' June 21, 2004 letters, the Plaintiffs' suffered no injury or damage as a result.

### ELEVENTH AFFIRMATIVE DEFENSE

Zurich did not violate M.G.L. c. 176D or any other Massachusetts statute or law in allegedly failing to make an offer of settlement because liability in this case is not reasonably clear.

### TWELFTH AFFIRMATIVE DEFENSE

Zurich did not violate M.G.L. c. 176D or any other Massachusetts statute or law in allegedly failing to make an offer of settlement because the damages in this case were not reasonably clear.

### THIRTEENTH AFFIRMATIVE DEFENSE

Zurich reserves the right to supplement the foregoing Affirmative Defenses to the extent allowed by law and to the extent that additional defenses are revealed during discovery.

**WHEREFORE**, Zurich requests that this Court:

(a)     dismiss Count VI of the Plaintiffs' Complaint against Zurich; and

(b)     grant such other and further relief as this Court deems appropriate.

7

**ZURICH AMERICAN INSURANCE COMPANY,**
By its Attorneys,

Peter G. Hermes, BBO. No. 231840
Gina A. Fonte, BBO No. 642367
HERMES, NETBURN, O'CONNOR &
SPEARING, P.C.
111 Devonshire Street, 8th Floor
Boston, MA 02110
(617) 728-0050
(617) 728-0052 (Fax)

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of May, 2005, I served the above notice on the
Plaintiffs in the above-entitled action by mailing a copy thereof, postage prepaid, to counsel of
record:

Garrett Bradley, Esquire
THORNTON & NAUMES, LLP
1000 Summer Street, 30th Floor
Boston, MA 02110

Anthony Campo, Esq.
Boyle, Morrisey & Campo
25 Stuart Street
Boston, MA 02116

Gina A. Fonte

G:\DOCS\PGH\clients\zurich\Heavern\Pleadings\Answer.doc

8

ATTORNEYS AT LAW

# Thornton & Naumes LLP

Michael P. Thornton (NH, ME & MA)
John T. Barrett (NH & MA)
Robert T. Naumes
Neil T. Leifer (ME, NJ & MA)
David J. McMorris (NY & MA)
Edwin L. Wallace
Robert M. Byrne, Jr.
David C. Strouss
Joseph R. Donohue (ME & MA)
Patricia M. Flannery
Andrew S. Wainwright
Michael A. Lesser
Marilyn T. McGoldrick
Garrett J. Bradley
Brad J. Mitchell
Kristen Marquis Fritz

100 Summer St. • 30th Floor • Boston, MA 02110 • 617-720-1333
Toll Free 800-431-4600   FAX# 617-720-2445
www.tenlaw.com

...U./Env. Cla...

June 21, 2004

JAN 0 4 2005

Operations Of

Mr. Andrew Marthaler
Claims Specialist
Zurich North America
1400 American Lane
Schaumburg, IL 60196-1056

Re:  Our Client:        Julia Heavern
     Your Insured:      Marriott Courtyard
     Date of Incident:  3/15/03
     Your File No.:     964117146

Dear Mr. Marthaler:

As you are aware, this office represents five minor individuals with respect to personal injuries sustained on March 15, 2003 while swimming in an indoor pool at the Marriott Courtyard in Concord, NH.

Please allow this letter to serve as our demand for settlement.

## FACTS/LIABILITY

On, March 15, 2003, the above minor children along with their parents were guests at the Marriott Courtyard in Concord, NH. On that date, the children were swimming in the indoor pool for a period of approximately six hours. Upon exiting the pool that afternoon, the children began to complain of skin burning and had troubled breathing. Their parents were very concerned after examining severe facial redness and burns upon the children's faces and heads. Blotchy redness was also located on the arms and legs.

At this point, Ms. Heavern, mother of Julia and Nicole Heavern, located the day manager, Rose Reidsema who after seeing the children called the poison control unit for assistance. Ms. Reidsema informed the parents that the pool had been shocked two weeks ago and had to be shut down due to the excess in chemical. She also indicated that the pool had been "shocked" the very morning that the children were swimming in it.

When Ms. Reidsema contacted the poison control unit and explained the situation, the poison control unit informed Ms. Reidsema and the parents that the reactions the children were experiencing was due to high chlorine levels in the pool and suggested that they be seen by their pediatricians. Ms. Reidsema apologized to the parents and stated that their usual practice in shocking the pool was to shock the pool and wait 24 hours before allowing any patrons in the pool.

## INJURIES

Julia Heavern, age 6, suffered 1st degree burns due to the above referenced incident. She also experienced trouble breathing and was prescribed Bacitracin and Neomycin-Zinc Sulfate Polymyxin B Sulfate ointment to help with peeling and infection. Julia missed two days of school due to this incident as well. I have attached medical records from South Shore Hospital regarding treatment received for her injuries. Julia still must apply sun block to protect her skin.

Julia was examined by Dr. William B. Patterson on January 28, 2004. At which time, Dr. Patterson noted that Julia had developed a transient skin reaction for several weeks following the pool incident which he causally relates to the pool incident.

The pool's chemical levels were dangerously high on the date the above minor children were occupying it (I have attached a copy of the Pool & Spa Chemical Test Results taken on the date of the incident as well as evidence regarding the "shocking of pools"), no indication or warning that the pool had been shocked the morning the children were in it was given, causing all of these minor children to suffer chemical burns and troubled breathing. These children now have problems going outdoors which, as you can understand, is devastating to children.

Kindly contact me if you wish to discuss settlement of these matters within 30 days of your receipt of this correspondence. Demand for settlement in this matter is $50,000. If I do not hear from you I will be forced to file suit. Please feel free to contact Attorney Garrett Bradley in my office to discuss this case as well.

I look forward to hearing from you and settling this matter in an amicable fashion.

Respectfully submitted,

John T. Barrett

JTB:tc
Enclosures

ATTORNEYS AT LAW

# Thornton & Naumes LLP

Michael P. Thornton (NH, ME & MA)
John T. Barrett (NH & MA)
Robert T. Naumes
Neil T. Leifer (ME, NJ & MA)
David J. McMorris (NY & MA)
Edwin L. Wallace
Robert M. Byrne, Jr.
David C. Strouss
Joseph R. Donohue (ME & MA)
Patricia M. Flannery
Andrew S. Wainwright
Michael A. Lesser
Marilyn T. McGoldrick
Garrett J. Bradley
Brad J. Mitchell
Kristen Marquis Fritz

100 Summer St. • 30th Floor • Boston, MA 02110 • 617-720-1333
Toll Free 800-431-4600    FAX# 617-720-2445
www.tenlaw.com

~.O./Env. Claim~

JUN 0 4 2005

June 21, 2004

Operations Of

Mr. Andrew Marthaler
Claims Specialist
Zurich North America
1400 American Lane
Schaumburg, IL 60196-1056

> Re:    Our Client:        Nicole Heavern
>        Your Insured:      Marriott Courtyard
>        Date of Incident:  3/15/03
>        Your File No.:     964117146

Dear Mr. Marthaler:

As you are aware, this office represents the above-named minor individuals with respect to personal injuries sustained on March 15, 2003 while swimming in an indoor pool at the Marriott Courtyard in Concord, NH.

Please allow this letter to serve as our demand for settlement.

## FACTS/LIABILITY

On, March 15, 2003, the above minor children along with their parents were guests at the Marriott Courtyard in Concord, NH. On that date, the children were swimming in the indoor pool. Upon exiting the pool that afternoon, the children began to complain of skin burning and had troubled breathing. Their parents were very concerned after examining severe facial redness and burns upon the children's faces and heads. Blotchy redness was also located on the arms and legs.

At this point, Ms. Heavern, mother of Julia and Nicole Heavern, located the day manager, Rose Reidsema who after seeing the children called the poison control unit for assistance. Ms. Reidsema informed the parents that the pool had been shocked two weeks ago and had to be shut down due to the excess in chemical. She also indicated that the pool had been "shocked" the very morning that the children were swimming in it. When Ms. Reidsema contacted the poison control unit and explained the situation, the poison control unit informed Ms. Reidsema and the parents that the reactions the children were experiencing was due to high chlorine levels in the pool and suggested that they be seen by their pediatricians. Ms. Reidsema apologized to the parents and stated that their usual practice in shocking the pool was to shock the pool and wait 24 hours before allowing any patrons in the pool.

## INJURIES

Nicole Heavern, age 9, suffered 2nd degree burns due to the high level of chemicals in the pool. Nicole also experienced trouble breathing and nausea for several days after the incident, causing her to miss two days of school. She was seen at South Shore Hospital for her injuries. I have attached her medical records for your review. Nicole was prescribed Bactroban and Bacitracin. Nicole, six months after the incident, is still suffering from severe chapped skin mainly above her upper lip which tends to become red and tender, hurting to the touch. Nicole must apply sun block constantly since her skin has become extremely sensitive due to the chemical burns she received. Nicole's parents indicate she has continued having breathing problems which she never had prior to this incident.

On January 28, 2004, Nicole was examined by Dr. William B. Patterson who indicated that Nicole suffered from transient skin relation caused by chlorine byproducts. He also notes that she has developed mild Reactive Airways Disease (asthma) which is causally related to her exposure with the possibility of necessary future treatment. Obviously her parents are very concerned since she never had asthma previously.

The pool's chemical levels were dangerously high on the date the above minor children were occupying it (I have attached a copy of the Pool & Spa Chemical Test Results taken on the date of the incident as well as evidence regarding the "shocking of pools"), no indication or warning that the pool had been shocked the morning the children were in it was given, causing all of these minor children to suffer chemical burns and troubled breathing. These children now have problems going outdoors which, as you can understand, is devastating to children.

Kindly contact me if you wish to discuss settlement of these matters within 30 days of your receipt of this correspondence. Demand for settlement, given that she will be dealing with asthma, which will require treatment for the rest of her life, is $500,000. If I do not hear from you I will be forced to file suit. Please feel free to contact Attorney Garrett Bradley in my office to discuss this case as well.

I look forward to hearing from you and settling this matter in an amicable fashion.

Respectfully submitted,

John T. Barrett

JTB:tc
Enclosures

ATTORNEYS AT LAW

# Thornton & Naumes LLP

Michael P. Thornton (NH, ME & MA)
John T. Barrett (NH & MA)
Robert T. Naumes
Neil T. Leifer (ME, NJ & MA)
David J. McMorris (NY & MA)
Edwin L. Wallace
Robert M. Byrne, Jr.
David C. Strouss
Joseph R. Donohue (ME & MA)
Patricia M. Flannery
Andrew S. Wainwright
Michael A. Lesser
Marilyn T. McGoldrick
Garrett J. Bradley
Brad J. Mitchell
Kristen Marquis Fritz

100 Summer St. • 30th Floor • Boston, MA 02110 • 617-720-1333
Toll Free 800-431-4600   FAX# 617-720-2445
www.tenlaw.com

June 21, 2004

L.O./Env. Claim

JAN 0 4 2005

**Operations Of**

Mr. Andrew Marthaler
Claims Specialist
Zurich North America
1400 American Lane
Schaumburg, IL 60196-1056

Re:   Our Clients:        Kerin Mitchell
      Your Insured:       Marriott Courtyard
      Date of Incident:   3/15/03
      Your File No.:      964117146

Dear Mr. Marthaler:

As you are aware, this office represents five minor individuals with respect to personal injuries sustained on March 15, 2003 while swimming in an indoor pool at the Marriott Courtyard in Concord, NH.

Please allow this letter to serve as our demand for settlement.

## FACTS/LIABILITY

On, March 15, 2003, the above minor children along with their parents were guests at the Marriott Courtyard in Concord, NH. On that date, the children were swimming in the indoor pool. Upon exiting the pool that afternoon, the children began to complain of skin burning and had troubled breathing. Their parents were very concerned after examining severe facial redness and burns upon the children's faces and heads. Blotchy redness was also located on the arms and legs.

At this point, Ms. Heavern, mother of Julia and Nicole Heavern, located the day manager, Rose Reidsema who after seeing the children called the poison control unit for assistance. Ms. Reidsema informed the parents that the pool had been shocked two weeks ago and had to be shut down due to the excess in chemical. She also indicated that the pool had been "shocked" the very morning that the children were swimming in it.

When Ms. Reidsema contacted the poison control unit and explained the situation, the poison control unit informed Ms. Reidsema and the parents that the reactions the children were experiencing was due to high chlorine levels in the pool and suggested that they be seen by their pediatricians. Ms. Reidsema apologized to the parents and stated that their usual practice in shocking the pool was to shock the pool and wait 24 hours before allowing any patrons in the pool.

## INJURIES

Kerin Mitchell, age 9, suffered facial burns, chest pains and is currently on an inhaler. She did not have any use of an inhaler prior to the accident. Kerin's face still gets red with even a slight interaction in the sun. She was prescribed Bacitracin, ointment and applies Neutrogena cream to her skin several times per day especially while being out in the sun due to her facial burns.

Kerin was examined by Dr. William B. Patterson on January 28, 2004 at which time Dr. Patterson diagnosed Kerin as having sustained an irritative skin rash due to over-exposure to chloramines in the pool at the Marriott Hotel.

The pool's chemical levels were dangerously high on the date the above minor children were occupying it (I have attached a copy of the Pool & Spa Chemical Test Results taken on the date of the incident as well as evidence regarding the "shocking of pools"), no indication or warning that the pool had been shocked the morning the children were in it was given, causing all of these minor children to suffer chemical burns and troubled breathing. These children now have problems going outdoors which, as you can understand, is devastating to children.

Kindly contact me if you wish to discuss settlement of these matters within 30 days of your receipt of this correspondence. Demand for settlement is $50,000. If I do not hear from you I will be forced to file suit.

I look forward to hearing from you and settling this matter in an amicable fashion.

Respectfully submitted,

John T. Barrett

JTB:tc
Enclosures

ATTORNEYS AT LAW

# Thornton & Naumes LLP

Michael P. Thornton (NH, ME & MA)
John T. Barrett (NH & MA)
Robert T. Naumes
Neil T. Leifer (ME, NJ & MA)
David J. McMorris (NY & MA)
Edwin L. Wallace
Robert M. Byrne, Jr.
David C. Strouss
Joseph R. Donohue (ME & MA)
Patricia M. Flannery
Andrew S. Wainwright
Michael A. Lesser
Marilyn T. McGoldrick
Garrett J. Bradley
Brad J. Mitchell
Kristen Marquis Fritz

100 Summer St. • 30th Floor • Boston, MA 02110 • 617-720-1333
Toll Free 800-431-4600    FAX# 617-720-2445
www.tenlaw.com

June 21, 2004

J.O./Env. C. c

JAN 0 4 2005

Operations Of

Mr. Andrew Marthaler
Claims Specialist
Zurich North America
1400 American Lane
Schaumburg, IL 60196-1056

> Re: Our Client:          Taylor Vieira
>     Your Insured:        Marriott Courtyard
>     Date of Incident:    3/15/03
>     Your File No.:       964117146

Dear Mr. Marthaler:

As you are aware, this office represents five minor individuals with respect to personal injuries sustained on March 15, 2003 while swimming in an indoor pool at the Marriott Courtyard in Concord, NH.

Please allow this letter to serve as our demand for settlement.

## FACTS/LIABILITY

On, March 15, 2003, the above minor children along with their parents were guests at the Marriott Courtyard in Concord, NH. On that date, the children were swimming in the indoor. Upon exiting the pool that afternoon, the children began to complain of skin burning and had troubled breathing. Their parents were very concerned after examining severe facial redness and burns upon the children's faces and heads. Blotchy redness was also located on the arms and legs.

At this point, Ms. Heavern, mother of Julia and Nicole Heavern, located the day manager, Rose Reidsema who after seeing the children called the poison control unit for assistance. Ms. Reidsema informed the parents that the pool had been shocked two weeks ago and had to be shut down due to the excess in chemical. She also indicated that the pool had been "shocked" the very morning that the children were swimming in it.

When Ms. Reidsema contacted the poison control unit and explained the situation, the poison control unit informed Ms. Reidsema and the parents that the reactions the children were experiencing was due to high chlorine levels in the pool and suggested that they be seen by their pediatricians. Ms. Reidsema apologized to the parents and stated that their usual practice in shocking the pool was to shock the pool and wait 24 hours before allowing any patrons in the pool.

## INJURIES

Taylor Vieira, age 10, suffered facial burns, troubled breathing and a sore throat as well. Taylor's face began to peel approximately two weeks after the incident mid April due to the chemical burns she received. She was prescribed Aquaphor for her burns to the facial area. She too must take precautions when going outdoors. Medical records are attached hereto as well.

Taylor was examined by Dr. Patterson on January 28, 2004. Dr. Patterson's examination revealed that Taylor suffered a significant skin reaction for several weeks to months due to the exposure of chemicals in the pool at the Marriott Hotel. Dr. Patterson also noted that Taylor has explained to him that she nervous about pools.

The pool's chemical levels were dangerously high on the date the above minor children were occupying it (I have attached a copy of the Pool & Spa Chemical Test Results taken on the date of the incident as well as evidence regarding the "shocking of pools"), no indication or warning that the pool had been shocked the morning the children were in it was given, causing all of these minor children to suffer chemical burns and troubled breathing. These children now have problems going outdoors which, as you can understand, is devastating to children.

Kindly contact me if you wish to discuss settlement of these matters within 30 days of your receipt of this correspondence. Demand for settlement is $150,000. If I do not hear from you I will be forced to file suit. Please feel free to contact Attorney Garrett Bradley in my office to discuss this case as well.

I look forward to hearing from you and settling this matter in an amicable fashion.

Respectfully submitted,

John T. Barrett

JTB:tc
Enclosures

One Harborside Drive
Logan International Airport
East Boston, MA 02128
617 568-6500
617 568-6573 fax

Case 1:05-cv-11170-RCL   Document 11-7   Filed 08/09/2005   Page 3 of 4

William B. Patterson MD. MPH. FACOEM
Chief Medical Officer



**Logan International Health Center**
*An affiliate of Occupational Health + Rehabilitation Inc*

April 27, 2004



APR 2 8 2004

Mr. David McMorris, Esq.
Thornton and Naumes
100 Summer Street, 30th Floor
Boston, MA 02110

RE: VIEIRA, TAYLOR
SSN: 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

Dear Mr. McMorris:

On 04/28/2004, I performed a consultation on Taylor Vieira, a pleasant young girl who was seen for evaluation of adverse health effects related to her exposure to a swimming pool in the winter 2003. Examination consisted of a detailed interview of her parents, followed by an interview and examination of Taylor by herself. The histories were similar.

HISTORY OF PRESENT ILLNESS: Taylor is an 11-year-old girl who was exposed in the winter, 2003 to a swimming pool at a Marriott Hotel in New Hampshire on a ski trip. At approximately 8 AM, she and others entered the pool and swam without difficulty. They then took a break and re-entered the pool at about 10 AM. Relatively quickly, her face became red and several others in the pool complained of mucosal membrane and skin irritation. They left the pool and subsequently learned that the pool had been "shocked" with chlorine.

Upon coming home, the family took her to a doctor, who prescribed a cream for her skin. She noticed that the skin was very red and much of her facial skin peeled. Within a few months, this has fully resolved. She reports that she was fine until about a month ago, when she began to notice a little rash under her nose, eyes and chin. She was given another cream by a physician for this.

Although Taylor noticed some mucosal membrane irritation at the time of the exposure, she and her family described her breathing as fine. She is an active athlete, playing basketball and soccer. She specifically denies any difficulty with cold air exercise. She reports that her eyes are fine.

She states that she is "a little nervous about pools." She has gone swimming with friends in their pools, and she hopes to go skiing this year. She does not have any avoidance related behavior or any severely negative attitudes toward Marriott which would suggest the presence of PTSD.

REVIEW OF SYSTEMS: The patient had her tonsils and adenoids removed at Massachusetts Eye and Ear Infirmary. She believes that she is allergic to penicillin.

Mr. David McMorris, Esq.
Thornton and Naumes
RE:    Vieira, Taylor
April 27, 2004
Page Two


PHYSICAL EXAMINATION:  Taylor is a cooperative young girl in no acute distress.  Her height is 60.5 inches and weight 104 and bp 110/44, pulse is 64.

Her mucous membranes were normal and chest is clear, including the forced expiration.  A fine maculopapular rash was observed on her forehead, the bridge of her nose, and her cheeks.  It was not present on her neck or hands.

DISCUSSION:  Based on the information available to me, with a reasonable degree of medical certainty, Taylor Vieira had a significant skin reaction to elevated levels of chloramines and other irritants at the swimming pool in New Hampshire.  This reaction lasted for weeks to months and has fully resolved.  There is no evidence of ongoing medical problems related to this, and I do not believe that this reaction puts her at increased risk of future disease.  There is no evidence of respiratory impairment, and her skin problems from the exposure have fully resolved.  It is likely that the current skin rash observed by the family is related to hormonal changes.

Chloramines are liberated by improper maintenance of swimming pool chemistry.  They are highly irritating gases, which accumulate just above the surface of the pool when there is imbalance of chlorine.  Chloramines are well known to cause skin irritation and are associated with mucous membrane irritation and in some cases mucous membrane and respiratory irritation.  In some cases, they may cause transient or permanent asthma.  There is a causal relationship between improper maintenance of the pool and the accumulation of chloramines at high enough levels to cause mucous membrane and skin irritation.

In summary, there is a causal relationship between improper maintenance of the swimming pool and the development of the transient skin rash of Taylor Vieira.

Thank you very much for the opportunity to examine this pleasant young girl.

Sincerely,

William B. Patterson, MD, MPH, FACOEM
Chief Medical Officer


WBP/jg

ATTORNEYS AT LAW

# Thornton & Naumes LLP

Michael P. Thornton (NH, ME & MA)
John T. Barrett (NH & MA)
Robert T. Naumes
Neil T. Leifer (ME, NJ & MA)
David J. McMorris (NY & MA)
Edwin L. Wallace
Robert M. Byrne, Jr.
David C. Strouss
Joseph R. Donohue (ME & MA)
Patricia M. Flannery
Andrew S. Wainwright
Michael A. Lesser
Marilyn T. McGoidrick
Garrett J. Bradley
Brad J. Mitchell
Kristen Marquis Fritz

100 Summer St. • 30th Floor • Boston, MA 02110 • 617-720-1333
Toll Free 800-431-4600   FAX# 617-720-2445
www.tenlaw.com

June 21, 2004

..O./Env. Claim..

JAN 0 4 2005

Operations O/

Mr. Andrew Marthaler
Claims Specialist
Zurich North America
1400 American Lane
Schaumburg, IL 60196-1056

> Re:    Our Client:          Brian Vieira
>        Your Insured:        Marriott Courtyard
>        Date of Incident:    3/15/03
>        Your File No.:       964117146

Dear Mr. Marthaler:

As you are aware, this office represents five minor individuals with respect to personal injuries sustained on March 15, 2003 while swimming in an indoor pool at the Marriott Courtyard in Concord, NH.

Please allow this letter to serve as our demand for settlement.

## FACTS/LIABILITY

On, March 15, 2003, the above minor children along with their parents were guests at the Marriott Courtyard in Concord, NH. On that date, the children were swimming in the indoor pool. Upon exiting the pool that afternoon, the children began to complain of skin burning and had troubled breathing. Their parents were very concerned after examining severe facial redness and burns upon the children's faces and heads. Blotchy redness was also located on the arms and legs.

At this point, Ms. Heavern, mother of Julia and Nicole Heavern, located the day manager, Rose Reidsema who after seeing the children called the poison control unit for assistance. Ms. Reidsema informed the parents that the pool had been shocked two weeks ago and had to be shut down due to the excess in chemical. She also indicated that the pool had been "shocked" the very morning that the children were swimming in it.

When Ms. Reidsema contacted the poison control unit and explained the situation, the poison control unit informed Ms. Reidsema and the parents that the reactions the children were experiencing was due to high chlorine levels in the pool and suggested that they be seen by their pediatricians. Ms. Reidsema apologized to the parents and stated that their usual practice in shocking the pool was to shock the pool and wait 24 hours before allowing any patrons in the pool.

## INJURIES

Brian Vieira, age 8, suffered facial burns, troubled breathing and sore throat. Brian's right eye remains irritant and red. He must administer prescribed eye drops three times per day and is still experiencing asthma type symptoms. Brian also experienced a burning of the skin for weeks following the incident. Brian was required to wear a hat and sun block to school to avoid the sun hitting his had and face. Medical records are attached from Brian's pediatrician and eye doctor.

Brian was examined by Dr. William B. Patterson on January 28, 2004. Dr. Patterson's examination revealed that Brian's rash was due to the chemical exposure of the pool at the Marriott Hotel. He also notes that Brian had pre-existing asthma which was exacerbated for 1-2 months because of this chlorine exposure.

The pool's chemical levels were dangerously high on the date the above minor children were occupying it (I have attached a copy of the Pool & Spa Chemical Test Results taken on the date of the incident as well as evidence regarding the "shocking of pools"), no indication or warning that the pool had been shocked the morning the children were in it was given, causing all of these minor children to suffer chemical burns and troubled breathing. These children now have problems going outdoors which, as you can understand, is devastating to children.

Kindly contact me if you wish to discuss settlement of these matters within 30 days of your receipt of this correspondence. Demand for settlement is $150,000. If I do not hear from you I will be forced to file suit. Please feel free to contact Attorney Garrett Bradley in my office to discuss this case as well.

I look forward to hearing from you and settling this matter in an amicable fashion.

Respectfully submitted,

John T. Barrett

JTB:tc
Enclosures

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

89-J-672

JENNIFER BELCHER

vs.

PAWTUCKET MUTUAL INSURANCE COMPANY.

MEMORANDUM AND ORDER

It seems apparent that once a tort claim is reported by an insured to the insurance company for a defense and payment if there is liability, the file material accumulated by the insurance company is largely in anticipation of litigation.

It seems equally apparent to me, as set forth in an earlier memorandum and order on the subject in Gross v. Liberty Mut. Ins. Co. and others, single justice docket no. 84-0138, that to authorize discovery in an unfair settlement claim before the underlying claim has been established is to get the cases in the wrong order.  The argument that the situation lies otherwise if the injured party has not actually filed a claim in court is unpersuasive.  There may be no complaint in court, but there is an underlying claim and, as the insurance company has argued, the distinction would encourage postponement of filing the underlying injury claim in favor of an unfair settlement claim against the insurance company.

I shall respond to the petition with a protective

☑ 010

order along the lines requested.

If I may be permitted an aside, it seems extraordinary that the insurance company in its memorandum suggests questions in the case about liability. This is a dog bite case. A child has been injured. Absent the most extraordinary circumstances, there is going to be liability and the question is how much are the damages. One would expect conscientous counsel to evaluate the claim and to give the company the benefit of its advice. In terms of the litigation posture of the insurance company, I am struck by the wholly routine nature of its answer to the plaintiffs' complaint against the insurance company.

Upon examination of the papers, which included the helpful memorandum filed by the plaintiff in Superior Court, it is ordered that until the underlying personal injury claim is settled or litigated to judgment, the insurance company need not produce memoranda and notes of its investigators or its lawyers in connection with the concern the claim of Jennifer Belcher against Rodney and Anne Lockyer. The plaintiff may have access to other material.

By the Court (Kass, J.),

Nancy Truck Foley

Clerk

Entered:   September 27, 1989.

-2-

COMMONWEALTH OF MASSACHUSETTS
APPEALS COURT

OCT  6 1989

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

89-J-672

JENNIFER BELCHER

vs.

PAWTUCKET MUTUAL INSURANCE COMPANY

## MOTION FOR RECONSIDERATION

Plaintiff Jennifer Belcher respectfully requests this Honorable Court to reconsider its decision of September 27, 1989 for the following reasons:

1)   The issue below was not whether discovery can be authorized in an unfair settlement claim before the underlying claim has been established;

2)   The issue below was whether or not the defendant met its burden of proof in claiming work product and attorney-client privileges;

3)   The defendant failed to meet its burden of proof as it produced no evidence in support, and accordingly, the trial court ruled against the defendant on that issue;

4)   The attached case of <u>Sham v. Hyannis Heritage House Hotel</u>, 118 F.R.D. 24, 26 (D.Mass. 1987) is on point with this issue;

5)   The attached case of <u>D'Angelo v. General Accident</u>

LAW OFFICES
MREL WAXLER,
N & COLLINS, P.C.
NORTH SIXTH ST.
NEW BEDFORD,
MASS. 02740
(508) 993-8000

Ins. Co., single justice docket no. 88-J-24, holds for the plaintiff and is closer to the facts in this action than Gross v. Liberty Mut. Ins. Co., single justice docket no. 84-0138.

Plaintiff respectfully requests this Honorable Court to reconsider its decision of September 27, 1989 in view of the foregoing and affirm the order of the trial court.

APPEALS COURT

Upon consideration of the motion for reconsideration filed by the plaintiff (paper #3), the order of September 27, 1989 is to stand except that the words "the concern" are struck from the last paragraph. The protective order is narrow.

Kass, J.

~ober 6, 1989

ATTEST: _Ruebea J. Quigley_ Asst. Clerk

Respectfully submitted,
By her attorneys,
HAMEL, WAXLER, ALLEN & COLLINS

_Michael J. Underhill_

MICHAEL J. UNDERHILL
7 North Sixth Street
New Bedford, MA 02740
(508) 993-8000
BBO# 545232

Date: October 5, 1989

Certificate of Service

I certify that a copy of the Motion For Reconsideration was forwarded to the attorney of record, Joseph F. Strumski, Jr., Esq., Morrison, Mahoney & Miller, 700 Pleasant Street, New Bedford, MA 02740, by first class mail, postage prepaid, on this 5th day of October, 1989.

_Michael J. Underhill_

Michael J. Underhill

LAW OFFICES
EL WAXLER,
& COLLINS, P.C.
NORTH SIXTH ST.
NEW BEDFORD,
MASS. 02740

(508) 993-8000

jbal

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

No. 84-0138

JACQUELYN R. GROSS, ET AL.

VS.

LIBERTY MUTUAL INSURANCE COMPANY
and
CNA INSURANCE COMPANIES.

MEMORANDUM & ORDER

The petitioner here is CNA Insurance Companies
(CNA). It seeks relief under G. L. c. 231, § 118,
from an order of a Superior Court judge denying a
protective order and, in effect, requiring it to make
discovery from files involving pending litigation.

The action against CNA, brought under G. L. c.
93A, is for failure to make a reasonable offer of
settlement in a tort case. CNA has made an offer of
$40,000. The plaintiffs have rejected this offer and
say that an offer of anything less than the policy
limits ($100,000) is not reasonable.

The case raises interesting issues concerning the
degree to which the lawyer-client privilege may be
penetrated by a party alleging unfair practice by
an insurance company.

In the instant case, however, those questions
have been brought forward prematurely. The significant
fact is that the liability of CNA's insured, and the
damages flowing from that liability, have yet to be

SULLAW LAW LIBRARY

CNA's insured, should there be a verdict within range
of the $40,000 offered, or should there be a settlement
within the range of the $40,000 offered, a claim of
unfair settlement could scarcely be made out. Without
intimating that the plaintiff here may properly have
access to CNA's files should the verdict in the
underlying suit be far in excess of CNA's best offer,
I conclude that, in any event, there ought to be no
access to those files until the underlying civil action
(Essex Superior Court Civil No. 81-2314) has been
determined.

Accordingly, I vacate so much of the order of the
Superior Court judge as required CNA to identify and
make available to the plaintiffs every document in
CNA's control which concerns the settlement value and
likelihood of recovery at trial by the plaintiffs
against CNA's insureds and the settlement value and
likelihood of recovery at trial of the Straubs against
the insureds. Nor shall CNA be required to identify
the persons involved with the valuation of the Gross
and Straub claims. Nor shall CNA be required to
divulge what persons CNA consulted to determine the
settlement value or probability of recovery at trial
on the Gross and Straub claims. Nor shall CNA be
required to state what it considers the likelihood
of recovery by the plaintiffs against the insureds.
Nor shall CNA at this time be required to respond to

-2-

interrogatories 8, 9, 10, 11, 12, 14, and 15. As to interrogatory number 13, CNA shall answer what its record retention policy is. It goes without saying that CNA is not to destroy any material now in its files and shall retain such material for six years following final determination of the tort suit or as a court otherwise orders. A copy of this order shall be placed in those files of CNA affected by this order.

By the Court, (Kass, J.)

Assistant Clerk

Entered: April 24, 1984.

-3-

1986 Mass. App. Div. 118

Considering all of the defendant's claims, we find no prejudicial error by the trial judge and this report is dismissed.

## Fred G. Bixby *vs.* Allstate Insurance Company

Western District—August 19, 1986.

Present: Lenhoff, McGuane & Dohoney, J.J.

*Insurance,* Unfair settlement practices.
*Consumer Protection Act,* G.L.c. 93A.
*Practice, Civil.* Motion to stay proceedings; Judicial discretion.

Report of court's dismissal of plaintiff's report. Action heard in the Northampton Division by Apkin, J.

William A. Norris for the plaintiff.
George F. Kelly and Marcia Brayton Julian for the defendant.

Dohoney, J.    This case involves a report from the action of a trial justice in allowing a Motion to Stay Proceedings. Certain background is essential to our understanding of the present case. The plaintiff Bixby was the passenger in an automobile involved in an accident on December 29, 1984. The defendant Allstate is the liability insurer for the other vehicle involved in the collision. This suit was instituted alleging violation of General Laws, Chapter 93A in that Allstate engaged in unfair settlement practices. Thereafter, the plaintiff brought suit against the defendant's insured in what we will call the underlying action. Subsequently, Allstate filed a Motion to Stay Proceedings in this case which was allowed by the Trial Justice. It is this action which is before us.

I. The first matter to address is whether the appeal is properly before us. Action on a Motion to Stay Proceedings is an interlocutory matter. *Cappadona v. Riverside 400 Function Room, Inc.*, 372 Mass. 167 (1977); *Cronin v. Strayer*, 392 Mass. 525 (1984); *Mancuso v. Mancuso*, 10 Mass. App. Ct. 395 (1980). An interlocutory matter may only be reported if the trial justice deems it appropriate. Mass. Rules Civil Procedure, Rule 64 (d) provides:

(d) Reports of Interlocutory Rulings. Interlocutory rulings may be reported in accordance with the procedure prescribed above in paragraph (c), provided that if the court in its discretion deems it appropriate, such rulings shall be reported without delay to the appellate division. When the court so decides to report such an interlocutory ruling without a delay, it may order that the party requesting the report prepare and file a draft report thereof within a period specified by the court. Failure of a party to comply with such an order shall constitute a waiver of his right to request a report on the ruling at issue.

See *Dufresne-Henry v. John R. Murphy Engineering Corporation*, 1980 Mass. App. Dec. 126. Here the Trial Justice exercised his discretion to report the case. In view of the nature of the motion, this was entirely appropriate. A motion of this type would clearly be moot if it were to wait for final judgment.

II. The second matter to address is the standard to be applied in a Motion to

LIBRARY

judicial error by the

Company

J.J.

retion.

tion heard in the

fant.

n of a trial justice in
nd is essential to our
the passenger in an
984. The defendant
ived in the collision.
Chapter 93A in that
after, the plaintiff
it we will call the
Stay Proceedings in
tion which is before

properly before us.
matter. *Cappadona*
); *Cronin v. Strayer*,
. Ct. 395 (1980). An
al justice deems it
vides:

rulings may be
ibed above in
etion deems it
t delay to the
eport such an
hat the party
hereof within a
aply with such
est a report on

*ration*, 1980 Mass.
to report the case.
priate. A motion of
udgment.
lied in a Motion to

Stay Proceedings. A Motion to Stay is addressed to the discretion of the Trial Justice. *Travenol Laboratories, Inc.* v. *Zotal, Ltd.*, 394 Mass. 95 (1985); *Taunton Gardens Company* v. *Hills*, 557 F.2d 877 (1st Cir. 1977).

III. In determining whether the judge properly exercised his discretion, we are brought to the substantive issue as to whether a claim for unfair settlement practices may be resolved before the underlying suit against the insured.

This is an area of frequent recent litigation. As more states have enacted legislation regulating unfair settlement practices, litigation has ensued over the right of private individuals to avail themselves of these statutes. The more frequently contested issue is whether there is a private cause of action. See *Patterson* v. *Globe American Casualty Co.*, 101 N.M. 541, 685 P.2d 396 (1984) for a collection of cases setting forth those jurisdictions which have allowed a private cause of action and those jurisdictions which have not permitted such claims. This issue is easily determined in Massachusetts since General Laws, Chapter 93A, Section 9 (1) specifically makes a violation of General Laws, Chapter 176D, Section 3, Clause 9 (regarding unfair settlement practices) an unfair and deceptive practice and thus it is actionable by a private party.

The issue which is much less litigated but which confronts us is whether this action may be resolved independently of or prior to the underlying suit.

The apparent first court to resolve this issue was *Royal Globe Ins. Co.* v. *Superior Court of Butt County*, 23 Cal.3d 880, 592 P. 2d 329, 153 Cal. Reporter 842 (1979). There the plaintiff fell at a supermarket. She sued the supermarket and the company which had issued a liability insurance policy (Royal Globe). The court concluded that a private cause of action existed but then stated that the claim may not be joined in the same lawsuit. The reasoning of the court is helpful to us:

> Moreoover, unless the trial against the insurer is postponed until the liability of the insured is first determined, the defense of the insured may be seriously hampered by discovery initiated by the injured claimant against the insurer. In addition, damages suffered by the injured party as a result of the insurer's violation of subdivisions (h) (5) and (h) (14) may best be determined after the conclusion of the action by the third party claimant against the insured. Thus, plaintiff's claim against defendant was brought prematurely and the trial court should have sustained defendant's demurrer and granted the motion for judgment on the pleadings on that ground.

Subsequently, the issue was presented to the Supreme Court of Appeals of West Virginia in *Jenkins* v. *J.C. Penney Casualty Ins. Co.*, 280 S.E. 2d 252 (W. Va. 1981). Here the plaintiff suffered minor damage to her motor vehicle and alleged it was caused by the insured of J.C. Penney. She alleged J.C. Penney had not attempted in good faith to settle the case. The Court first determined that a private cause of action existed but held that a direct action against the insurance company cannot be maintained before the underlying claim is settled. Their comments were:

> It can hardly be doubted that in a given factual situation there may be some bonafide dispute over what is a fair settlement offer or whether liability is reasonably clear. Given the adversarial nature of the settlement of tort claims, it can be expected that the parties will often disagree as to whether there has been a reasonable attempt made to promptly and fairly settle a claim where the liability is reasonably clear.

SOCIAL LAW LIBRARY

1986 Mass. App. Div. 120

[4.5] To permit a direct action against the insurance company before the underlying claim is ultimately resolved may result in duplicitous litigation since the issue of liability and damages as they relate to the statutory settlement duty are still unresolved in the underlying claim. Once the underlying claim has been resolved, the issues of liability and damages have become settled and it is possible to view the statutory claim in light of the final result of the underlying action. A further policy reason to delay the bringing of the statutory claim is that once the underlying claim is resolved, the claimant may be sufficiently satisfied with the result so that there will be no desire to pursue the statutory claim. Moreover, it is not until the underlying suit is concluded that the extent of reasonable damages in the statutory action will be known. The California court for reasons less explicit than those has reached the same conclusion. *Royal Globe Insurance Co.* v. *Superior Court, supra.* We, therefore, conclude that a private cause of action cannot be maintained for a violation of W. Va. Code, 33-11-4(9), until the underlying suit is resolved.

The apparent last court to address the matter was the Supreme Court of Montana in *Klaudt* v. *Flink*, 658 P.2d 1065 (Mont. 1983). There the decedent was a passenger in an auto operated by Flink. Flink was apparently intoxicated and admitted criminal violation. The issue before the court was whether the statute gave cause of action against the insurer which could be presented jointly with the underlying civil action. The court held that it could and said:

> [4] However, at this point, we must differ with the position adopted by the other jurisdictions which allow an action such as this to be prosecuted only after the insured's liability has been adjudicated. We believe that the action may be filed and tried before, concurrent with, or after liability has been determined. We see no problems with the possibility of contrary findings in the two actions, the doctrine of res judicata, collateral estoppel or the like because different issues are involved in the two cases. The issue in the action against the insurer for violation of the insurance code is simply an action to determine whether or not the insurer violated its duty of fair dealing in settlement negotiations with the claimant, while the action to determine the ultimate liability of the driver rests on considerations of negligence and comparative negligence.

> The obligation to negotiate in good faith and to promptly settle claims does not mean that liability has been determined. Section 33-18-201(6) states that the insurer's obligation arises when liability has become 'reasonably clear.' In evaluating the insurance case, the jury must determine whether the insurer negotiated in good faith given the facts it then had. This consideration is separate and apart from the jury's ultimate consideration of the merits of any given action.

> We have considered whether the result here reached contravenes the purpose of Rule 411, M.R. Evid., on the admissibility of insurance. The rule only prohibits the introduction of insurance where it is offered for the purpose of showing negligence or liability. Here, the issues to be tried are separate and the rule is not violated.

> We realize that many will view this result as harsh. However, the legislature has reacted to what it perceives to be an important

company before
ilt in duplicitous
hey relate to the
underlying claim.
issues of liability
ible to view the
erlying action. A
tatutory claim is
laimant may be
ll be no desire to
d the underlying
damages in the
: for reasons less
ion. *Royal Globe*
re, conclude that
a violation of W.
olved.
he Supreme Court of
. There the decedent
ink was apparently
before the court was
surer which could be
urt held that it could

osition adopted
ich as this to be
en adjudicated.
ore, concurrent
o problems with
. the doctrine of
different issues
ion against the
ly an action to
y of fair dealing
e the action to
considerations

tly settle claims
Section 33-18-
en liability has
e case, the jury
ood faith given
ind apart from
given action.

ontravenes the
insurance. The
ere it is offered
the issues to be

However, the
an important

problem. Insurance companies have, and are able to exert, leverage against individual claimants because of the disparity in resource base. Justice delayed is often justice denied. Public policy calls for a meaningful solution. The legislature has spoken and we, by this decision, breathe life into the legislative product.

In considering all of these factors, substantial deference should be paid to the Trial Justice. He was in a far better position to assess the possible prejudice to the Defendant as to the status of discovery. He was also better able to determine the prejudice to the plaintiff by having to wait for a possible recovery under his claim for unfair settlement practices.

Therefore, while there appears to be no general rule in Massachusetts as to whether a claim for unfair settlement practices must await the result of the underlying action, plaintiff has failed to show an abuse of discretion in doing so in this case.

Thus, the Report be and hereby is dismissed.

---

# Richard P. Boyer, Jr., PPA and others[1] *vs.* Edward Russell and others[2]

Western District—August 28, 1986.

Present: Turcotte, P.J., Lenhoff & Dohoney, JJ.

*Tort,* Dog bite.
*Practice, Civil,* Dist./Mun. Cts. R. Civ. P., Rule 64 (c) (2); Draft report.

Report of the court's dismissal of plaintiffs' report. Action heard in the Northampton Division by Morse, J.

Leon W. Malinowsky for the plaintiffs.
David G. Carlson and John C. Sikorski for the defendants.

**Lenhoff, J.**    The Trial Court's dismissal of the submitted Draft Report[3] (same appears below with the findings of the Trial Court excluded therefrom) was proper; and, such disposition was legally correct.

The plaintiffs clearly failed to comply with Dist./Mun. Cts. R. Civ. P., Rule 64 (c) (2) entitled "Contents of the Draft Report." The substantial lack of compliance therewith justified the Trial Court in invoking the action taken. See *Partlow* v. *Hertz Corp.*, 370 Mass. 787, 790 (1976).

Therefore, the report here presented pursuant to Dist./Mun. Cts. R. Civ. P., Rule 64 (c) (6), be and is hereby dismissed.

---

[1] Margaret A. Boyer and Margaret A. Boyer.
[2] Robert LaPointe, and Richard P. Boyle as trustee of Dick Boyle Realty Trust.
[3] On October 28, 1985, the Court, Morse, J., heard the facts of this dog-bite case, and entered the appended findings dated Dec. 18, 1985.

The Court ruled that the lease, appended between the defendants Boyle and LaPointe, did not constitute LaPointe's neighbors in the complex (plaintiffs) as third-party beneficiaries of the lease contract entitled to recover under Massachusetts Law.

Plaintiffs respectfully assert that they should have been found entitled to recover by virtue of their status as third-party beneficiaries of the no-pets clause in the lease, regardless of the fact the said clause allowed pets if the landlord (Boyle) gave the tenant (LaPointe) written permission for pets, since no such written permission had been given.